# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ADVANCE TRADING, INC.,       )
an Illinois corporation,       )
      )
      **Plaintiff,**       )
      )    **No. 1:12-CV-0033**
      **vs.**       )
      )    **Hon. Joan H. Lefkow**
**LIEBEN, WHITTED, HOUGHTON,**       )
**SLOWIACZEK & CAVANAGH, P.C., L.L.O,**       )
**and T. GEOFFREY LIEBEN, individually,**       )
      )
      **Defendants.**       )

## OPINION AND ORDER

On January 5, 2012, plaintiff Advance Trading, Inc. ("ATI") filed the present action for

breach of contract and, alternatively, for professional negligence against Lieben, Whitted,

Houghton, Slowiaczek & Cavanagh, P.C., L.L.O. (the "Lieben firm" or "the firm") and

T. Geoffrey Lieben ("Lieben") (collectively, "defendants") alleging that defendants' negligent

legal advice caused a retirement plan administered by ATI to engage in multiple prohibited

transactions under the Internal Revenue Code (the "Code") resulting in damages to ATI.

Defendants now move to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1)

and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim. For the reasons

set forth herein, defendants' motion (dkt. #19) will be denied.

# BACKGROUND[1]

ATI is a commodity brokerage firm incorporated in Illinois with its principal place of business in Bloomington, Illinois. The Lieben firm is a legal services provider incorporated in Nebraska with its principal place of business in Omaha, Nebraska. The firm specializes in financial, estate and retirement planning. T. Geoffrey Lieben is a member of the firm who concentrates his practice in the creation and utilization of employee stock ownership plans ("ESOPs").[2]

ATI has established an ESOP and 401(k) plan (the "Plan") to provide its employees with retirement benefits. In the fall of 2003, ATI retained Lieben and his firm to advise it on various matters including how to conform with the terms of the Plan and the Code. Over the next several years, ATI sought defendants' advice on these and other benefits-related matters. Specifically, in January 2009, ATI sought defendants' guidance on whether the Plan could make pre-age 59½ distributions to participants in accordance with the Code and applicable federal and state laws. On January 21, 2009, defendants advised ATI via email that it was appropriate for the Plan to make pre-age 59½ distributions to participants and sent ATI a draft amendment to the Plan (the "amendment") purportedly accomplishing this goal. (Compl. Ex. A & B.) ATI adopted this amendment and informed participants that they could elect to transfer their 401(k) deferral accounts and safe harbor matching contribution accounts to individual retirement accounts ("IRAs") without disqualifying the Plan or incurring penalties under the Code.

---

[1] The facts recounted in this section are taken from the complaint and are presumed true for purpose of resolving the pending motion.

[2] The complaint contains no jurisdictional allegations as to Lieben individually. The parties do not dispute that their citizenship is diverse. Nevertheless, ATI must amend its complaint to specify Lieben's citizenship.

In or around August 2011, ATI learned that the amendment in fact prohibited distributions of employee-elected deferrals and was silent on the topic of safe harbor contributions. ATI also discovered that the Code prohibited pre-age 59½ distributions of employee elected deferrals and safe harbor contributions. After ATI adopted the amendment but before it learned of these restrictions, several of its employees transferred funds from their 401(k) accounts to IRAs and ATI made distributions to them in violation of the Code ("disqualifying distributions").

On August 28, 2011, Lieben stated in an email to ATI that his January 21, 2009 email was "poorly worded." (Compl. Ex. C.) On August 30, 2011, Lieben sent a memorandum to ATI admitting that "[t]he transfer of 401(k) deferrals and safe harbor contributions violate the provisions of Section 401(k) of the . . . Code" and setting out several possible courses of action for ATI. (*Id.* Ex. D.) Thereafter, ATI contracted with new counsel to revise the Plan.

ATI now alleges that as a result of defendants' negligent advice it incurred $287,347.35 in IRS excise taxes, and $1,924.59 and $1,795.13 in late filing and payment assessments for the 2009 and 2010 plan years. ATI also asserts that it incurred $47,194.83 in attorneys' fees and a $2,500 filing fee to participate in the IRS's Voluntary Compliance Program, which allowed ATI to self-correct the disqualifying distributions. (*See* Pl.'s Resp. at 14.) ATI seeks to recover these amounts from defendants.

## LEGAL STANDARD

Rule 12(b)(1) provides that a case will be dismissed if the court lacks the authority to hear and decide the dispute. Fed. R. Civ. P. 12(b)(1). If subject matter jurisdiction is not evident from the face of the complaint, the court analyzes the motion to dismiss under Rule 12(b)(1) as any other motion to dismiss. *United Phosphorous, Ltd.* v. *Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (en banc), *overruled on other grounds by Minn-Chem, Inc.* v. *Agrium Inc.*, 683 F.3d 845 (7th Cir. 2012). When presented with a facial challenge, "the court does not look beyond the allegations in the complaint, which are taken as true for purposes of the motion." *Apex Digital, Inc.* v. *Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). Where, as here, "evidence pertinent to subject matter jurisdiction has been submitted . . . 'the district court may properly look beyond the jurisdictional allegations of the complaint . . . to determine whether in fact subject matter jurisdiction exists.'" *Sapperstein* v. *Hager*, 188 F.3d 852, 855 (7th Cir. 1999) (quoting *United Transp. Union* v. *Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996)). The plaintiff bears the burden of proving that the jurisdictional requirements have been met. *Kontos* v. *United States Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987).

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *General Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis, but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868

(2009); *see Bell Atl.* v. *Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,

556 U.S. at 678. At the same time, the plaintiff need not plead legal theories. *Hatmaker* v.

*Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). Rather, it is the facts that count.

## ANALYSIS

### I.      Lack of Subject Matter Jurisdiction under Rule 12(b)(1)

Defendants first move to dismiss the complaint for lack of subject matter jurisdiction.

The district court possesses diversity jurisdiction over all civil actions where the parties are

citizens of different states and the amount in controversy exceeds $75,000 exclusive of interests

and costs. 28 U.S.C. § 1332(a). The parties do not dispute that their citizenship is diverse;[3]

rather, defendants argue that ATI cannot meet the amount in controversy requirement because

ATI was not liable for the excise taxes it now seeks to recover from defendants. Under the legal

certainty test, the court possesses subject matter jurisdiction over ATI's claims unless it appears

"to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul

Mercury Indem. Co.* v. *Red Cab Co*., 303 U.S. 283, 289, 58 S. Ct. 586, 82 L. Ed. 845 (1938),

*superseded by statute on other grounds*; *see Meridian Sec. Ins. Co.* v. *Sadowski*, 441 F.3d 536,

543 (7th Cir. 2006). As the party asserting jurisdiction, ATI bears the burden of demonstrating

by a preponderance of the evidence that the amount in controversy is at least $75,000. *See

Blomberg* v. *Serv. Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011); *Meridian Sec. Ins. Co.*,

441 F.3d at 543.

---

[3] *See Cote* v. *Wadel*, 796 F.2d 981, 983–84 (7th Cir. 1986) ("[A] professional corporation is to be treated like other corporations for purposes of determining the presence or absence of diversity jurisdiction.")

ATI argues that it can meet the legal certainty test by demonstrating that it was required to pay excise taxes under § 4975(a) of the Code after participating in a prohibited transaction. The Code defines a prohibited transaction to include "any direct or indirect transfer to, or use by or for the benefit of, a disqualified person of the income or assets of the plan." 26 U.S.C. § 4975(c)(1)(D). ATI asserts that it participated in multiple prohibited transactions by approving the disqualifying distributions. Under § 4975(a) of the Code, each prohibited transaction is subject to an excise tax. 26 U.S.C. § 4975(a). This section states,

> The rate of tax shall be equal to 15 percent of the amount involved with respect to the prohibited transaction for each year (or part thereof) in the taxable period. The tax imposed by this subsection shall be paid by any disqualified person who participates in the prohibited transaction (other than a fiduciary acting only as such).

26 U.S.C. § 4975(a); *see O'Malley* v. *Comm'r*, 96 T.C. 644, 651 (1991) ("[I]f a disqualified person participates by approving a prohibited transaction or participates by receiving the benefit of a prohibited transaction, the disqualified person is subject to the section 4975(a) excise tax."). A prohibited transaction that is not corrected within the taxable period is subject to a tax equal to 100 percent of the amount involved, which is to be paid by "any disqualified person who participated in the prohibited transaction (other than a fiduciary acting only as such)." 26 U.S.C. § 4975(b).

Defendants argue that any participation by ATI in a prohibited transaction was as "a fiduciary acting only as such," and therefore ATI is not obligated to pay the resulting excise tax. ATI counters that it qualifies as both a "fiduciary" and a "disqualified person" under the Code, and it was not acting solely as a fiduciary when it participated in the prohibited transactions. *See id.* § 4975(e)(2)(A), (C) & (H) (defining a "disqualified person" as "a fiduciary" or "an employer any of whose employees are covered by the plan" or "an officer, director (or an individual

having powers or responsibilities similar to those of officers or directors)"); *id.* § 4975(e)(3)(A) & (C) (defining a "fiduciary" as any person who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets" or "has any discretionary authority or discretionary responsibility in the administration of such plan").

In support of its position, ATI has submitted two letters from the IRS assessing excise tax against ATI for the 2009 and 2010 tax periods. (Dkt. #23-2, Salmon Aff. Exs. 1 & 2.) The first letter, dated February 13, 2012, states that IRS records show that ATI owes $1,924.59 for the tax period ending December 31, 2009. (*Id.* Ex. 1.) This letter also indicates that ATI was subject to an excise tax of $35,809.38 under § 4975(a), but that this tax was paid on January 5, 2012 and is no longer due. (*Id.*) The second letter, also dated February 13, 2012, states that ATI owes $26,061.69 for the tax period ending December 31, 2010. (*Id.* Ex. 2.) These letters support ATI's position that it was acting as a "disqualified person" when it participated in the prohibited transactions and is therefore liable for the excise tax under § 4975(a). Although defendants argue that by merely approving the transactions ATI was participating solely as a fiduciary, they offer no legal authority to support their position. As such, the court concludes that ATI has established by a preponderance of the evidence that the amount in controversy exceeds $75,000 and that the court possesses subject matter jurisdiction over its claims.

## II.     Failure to State a Claim under Rule 12(b)(6)

Defendants next assert that the complaint fails to plausibly suggest that a prohibited transaction took place because (1) ATI voluntarily corrected the disqualifying distributions; and (2) ATI did not act in bad faith in approving the transactions. Defendants' position is not persuasive. First, defendants cite no legal authority to support their argument that participation in the Voluntary Compliance Program negates a prohibited transaction. The authority cited by ATI suggests the opposite. *See* Rev. Proc. 2008-50, I.R.B. § 6.09 (stating that "the correction programs are not available for events for which the Code provides tax consequences other than plan disqualification . . . [f]or example, . . . prohibited transactions"). Second, defendants argue that because ATI did not intend the disqualifying distributions to be abusive, the distributions do not qualify as prohibited transactions. Case law cited by ATI indicates otherwise, however. *See, e.g., O'Malley*, 96 T.C. at 651 ("[T]hose that participate in a § 4975 prohibited transaction are liable for the excise tax notwithstanding the fact that they may have acted innocently or in good faith or otherwise did not know or understand the nature of the transaction."); *Leib* v. *Comm'r*, 88 T.C. 1474, 1481 (1987) ("[W]e conclude that the prohibited transactions contained in section 4975(c)(1) are just that. The fact that the transaction would qualify as a prudent investment when judged under the highest fiduciary standards is of no consequence. Furthermore, the fact that the plan benefits from the transaction is irrelevant. Good intentions and a pure heart are no defense."); *Rutland* v. *Comm'r*, 89 T.C. 1137, 1146 (1987) ("The language and legislative history of ERISA indicate a congressional intention to create, in section 4975(c)(1), a blanket prohibition against certain transactions, regardless of whether the transaction was entered into

prudently or in good faith or whether the plan benefitted as a result.")  The court concludes that defendants have failed to meet their burden to show that plaintiff is entitled to no relief.

## CONCLUSION AND ORDER

For the foregoing reasons, defendants' motion to dismiss [#19] is denied.  A scheduling conference is set for February 7, 2013 at 8:30 a.m.  ATI is directed to file an amended complaint specifically alleging the citizenship of defendant Geoffrey Lieben to include jurisdictional allegations as to defendant Lieben by January 11, 2013.

Dated: December 20, 2012

Enter: _____

JOAN HUMPHREY LEFKOW
United States District Judge